# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-40382

United States Court of Appeals
Fifth Circuit

**FILED**

April 30, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff – Appellee

v.

JOHN KEVIN WALDRIP, also known as DVD Man,

Defendant – Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:13-CR-16

Before HIGGINBOTHAM, DAVIS, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Appellant John Waldrip appeals the denial of his motion to suppress evidence obtained from his vehicle and residence after a traffic stop. He argues that the investigating police officer unconstitutionally prolonged the stop to deploy a drug detecting dog to sniff the outside of his vehicle. Once deployed, the dog alerted, which indicated the possible presence of narcotics. A subsequent search of the vehicle yielded a bag containing methamphetamine along with a cache of counterfeit DVDs. Waldrip does not contest the legality

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-40382

of the stop at its inception. Nor does he dispute that the officer had probable cause to search his vehicle once the dog alerted. Waldrip's specific claim is that he was detained longer than necessary to effectuate the original purpose of the stop. The district court held that the officer developed reasonable suspicion of additional criminal activity within the scope of his initial investigation that justified extending the stop to deploy the dog to dispel that suspicion. We review the district court's factual determinations for clear error and its ultimate Fourth Amendment conclusions de novo.[1]

Under our controlling precedents, "a detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges."[2] The officer initiated the traffic stop after he observed Waldrip commit a moving violation. We therefore must consider whether the officer developed reasonable suspicion of additional criminal activity within the scope of his investigation of the original moving violation. In similar cases we have judged reasonable suspicion as of the time a final computer check of vehicle occupants' licenses was completed.[3] We apply the same benchmark here.

A video camera and microphone mounted in the patrol car recorded the entire stop, which spanned about eleven minutes and eight seconds from the time Waldrip's vehicle came to a complete stop until the dog alerted. The video recording portrays a routine stop during which the officer pursued his

---

[1] *United States v. Brigham*, 382 F.3d 500, 506 n.2 (5th Cir. 2004) (en banc).

[2] *Id.* at 507 (citing *United States v. Dortch*, 199 F.3d 193, 200 (5th Cir. 1999), *United States v. Machuca-Barrera*, 261 F.3d 425, 434 (5th Cir. 2001)).

[3] *See, e.g.*, *United States v. Pack*, 612 F.3d 341, 361 (5th Cir. 2010), *modified on reh'g*, 622 F.3d 383 (5th Cir. 2010), ("[The] final computer check was completed at 9:10 a.m. . . . Therefore, in order for this detention to have been legal, we must conclude that the facts [the officer] articulated as the basis for his suspicion that criminal activity was afoot were observed by 9:10 a.m. and were sufficient to make his suspicion of criminal activity reasonable.").

investigation of the moving violation "in a diligent and reasonable manner."[4] The video recording also demonstrates that the final computer check of Waldrip's female passenger's license came back "clean" at 9:52:17 p.m., about nine minutes and ten seconds into the stop. We conclude that prior to that moment the officer ascertained sufficient facts to form a "particularized and objective basis" for suspecting additional criminal activity under the "totality of the circumstances."[5] Relevant circumstances supporting the officer's reasonable suspicion include: (1) a tip from a fellow officer and an anonymous phone call to the police about suspected drug activity at Waldrip's residence; (2) Waldrip's nervousness during the stop; (3) Waldrip's involuntary twitching and jerking, along with scars and sores on his arms, face, and neck, all consistent with symptoms of methamphetamine abuse; and (4) Waldrip's story that at 9:45 p.m. and while casually dressed he was embarking on a one-hundred-twenty-mile journey from his home in Angleton, Texas, to drop off his female passenger—who was not a coworker—in Conroe, Texas, before ultimately heading to work at a restaurant in downtown Houston.

\*    \*    \*

Finding no Fourth Amendment violation, we AFFIRM the district court's denial of the motion to suppress.

---

[4] *United States v. Sharpe*, 470 U.S. 675, 686 (1985).

[5] *United States v. Arvizu*, 534 U.S. 266, 273-74 (2002) (internal quotation marks and citations omitted).